Filed 6/2/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| REHAN NAZIR,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | B310806<br><br>(Los Angeles County<br>Super. Ct. No. VA151320) |

        ORIGINAL PROCEEDINGS in mandate.  Superior Court
of Los Angeles County, Lee W. Tsao, Judge.  Petition granted.
        Okabe & Haushalter, Mark Haushalter and Joe Weimortz;
Kravis, Graham & Zucker, Bruce Zucker and Thomas Ian
Graham for Petitioner.
        Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Senior
Assistant Attorney General, Michael R. Johnsen, Supervising
Deputy Attorney General, and Blythe J. Leszkay, Deputy

Attorney General as Amicus Curiae on behalf of Petitioner and Real Party in Interest.

Claudia Y. Bautista, Public Defender (Ventura), and Michael C. McMahon, Senior Deputy Public Defender for California Public Defenders Association and Claudia Y. Bautista, Public Defender, as Amicus Curiae on behalf of Petitioner.

Michael Romano, Erwin Chemerinsky, and Miriam Krinsky for 76 Current and Former Elected Prosecutors and Attorneys General as Amicus Curiae on behalf of Petitioner.

Frederick R. Bennett for Respondent.

Browne George Ross O'Brien Annaguey & Ellis, Eric M. George, Thomas P. O'Brien, Nathan J. Hochman, David J. Carroll, and Matthew O. Kussman for Association of Deputy District Attorneys for Los Angeles County as Amicus Curiae on behalf of Respondent.

Greg D. Totten and Robert P. Brown, Chief Deputy District Attorney (San Bernardino) for California District Attorneys Association as Amicus Curiae on behalf of Respondent.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Respondent.

George Gascón, District Attorney, Diana M. Teran, Deputy District Attorney; Hogan Lovells, Stephanie Yonekura, Neal Kumar Katyal, Jo-Ann Tamila Sagar, and Danielle Desaulniers Stempel for Real Party in Interest.

_____

# INTRODUCTION

"[T]here is a long history of dispute among the various branches of state government over the application of [Penal Code] section 1385 to sentencing allegations."[1] (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 521-522 (*Romero*).) In this latest chapter of that history, Rehan Nazir argues the trial court abused its discretion in refusing to dismiss under section 1385 certain firearm enhancements the People alleged against him. Nazir and the People argue the trial court should have dismissed the sentence enhancements "in furtherance of justice" under section 1385 in accordance with a policy issued by the district attorney for Los Angeles County, George Gascón, upon his election. That policy directs all deputy district attorneys "to orally amend the charging document to dismiss or withdraw any [sentence] enhancement" alleged in a pending case.

Based on the district attorney's new policy, the prosecutor moved under section 1385 to dismiss firearm enhancements alleged under sections 12022.5 and 12022.53. The trial court denied the motion and refused to consider the new policy in determining whether to dismiss the enhancements under section 1385.

We agree with Nazir and the People that the trial court misunderstood the scope of its discretion under section 1385 when it refused to consider the district attorney's new policy, but we disagree with the People that the trial court lacked discretion to deny a motion by the People to dismiss enhancements pursuant to that policy. Under the relevant statutory scheme,

---

[1] Undesignated statutory references are to the Penal Code.

3

long-standing case authority, and the rules of court governing sentencing, a trial court deciding whether to dismiss a sentence enhancement in furtherance of justice under section 12022.5 or 12022.53 must consider case-specific factors as well as general sentencing objectives. Therefore, we grant Nazir's petition for a writ of mandate and direct the trial court to vacate its December 18, 2020 order denying the People's motion to dismiss and to conduct a new hearing to reconsider the People's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The People Charge Nazir with 35 Counts and Allege Certain Firearm Enhancements*

Nazir was a former Torrance police officer who became a bail agent. In July 2019 he was arrested for crimes allegedly committed in the course of his work, including kidnapping, false imprisonment, and grand theft of an automobile. Nazir was arraigned on July 26, 2019.

The People filed a fourth amended complaint on May 4, 2020, alleging 35 counts against Nazir. In connection with 22 of those counts, the People alleged Nazir personally used a firearm, within the meaning of section 12022.5, subdivision (a), an enhancement that could enhance Nazir's sentence by three, four, or 10 years; committed an assault with a deadly weapon or by means likely to produce great bodily injury by personally shooting a firearm from an automobile, within the meaning of section 12022.5, subdivision (d), an enhancement that could enhance Nazir's sentence by three, four, or 10 years; or personally used a firearm in the commission of a felony, within

the meaning of section 12022.53, subdivision (b), an enhancement that could enhance Nazir's sentence by 10 years.

B.    *The New District Attorney Adopts a Policy Regarding Sentence Enhancements*

On November 3, 2020 the voters of Los Angeles County elected George Gascón to replace Jackie Lacey as district attorney.  On December 8, 2020 the new district attorney issued Special Directive 20-08, which made changes to the Legal Policies Manual.  Special Directive 20-08 stated that "sentence enhancements or other sentencing allegations . . . shall not be filed in any cases and shall be withdrawn in pending matters." The Special Directive explained that "the current statutory ranges for criminal offenses alone, without enhancements, are sufficient to both hold people accountable and also to protect public safety" and that "studies show that each additional sentence year causes a 4 to 7 percent increase in recidivism that eventually outweighs the incapacitation benefit."  An appendix to Special Directive 20-08 stated that there was no compelling evidence California's 100-plus sentence enhancements improved public safety, that such enhancements contributed to prison overcrowding, and that they "exacerbate[d] racial disparities in the justice system."  The appendix also stated "long sentences do little" to deter crime.

Special Directive 20-08 instructed deputy district attorneys in pending cases to move to dismiss or withdraw sentence enhancement allegations.  On December 15, 2020 the district attorney issued a clarification to Special Directive 20-08 for pending cases where the People had alleged prior serious or violent felony convictions under the three strikes law (§§ 667,

5

subds. (b)-(i), 1170.12, subds. (a)-(d)) or sentence enhancements. In such cases, Special Directive 20-08.1 directed deputy district attorneys to "make the following record":

"'The People move to dismiss and withdraw any strike prior (or other enhancement) in this case. We submit that punishment provided within the sentencing triad of the substantive charge(s) in this case are [*sic*] sufficient to protect public safety and serve justice. Penal Code section 1385 authorizes the People to seek dismissal of all strike prior(s) (or other enhancements) when in the interests of justice. Supreme Court authority directs this Court to determine those interests by balancing the rights of the defendant and those of society "as represented by the People." The California Constitution and State Supreme Court precedent further vest the District Attorney with sole authority to determine whom to charge, what charges to file and pursue, and what punishment to seek. That power cannot be stripped from the District Attorney by the Legislature, Judiciary, or voter initiative without amending the California Constitution. . . . Additional punishment provided by sentencing enhancements or special allegations provide[s] no deterrent effect or public safety benefit of incapacitation—in fact, the opposite may be true, wasting critical financial state and local resources.'"[2] If a trial court refused to dismiss allegations of prior serious or violent

---

[2] We take judicial notice under Evidence Code sections 452, subdivision (c), and 459 of Special Directive 20-08.1. The prosecutor cited Special Directive 20-08.1 in the trial court, but Nazir did not include it in the record. (See *Western States Petroleum Assn. v. State Dept. of Health Services* (2002) 99 Cal.App.4th 999, 1002, fn. 1 [taking judicial notice of a policy of an executive agency].)

6

felony convictions under the three strikes law or refused to dismiss sentencing allegations under section 1385, Special Directive 20-08.1 instructed deputy district attorneys to "seek leave of the court to file an amended charging document pursuant to Penal Code section 1009."

C. *The Trial Court Denies the People's Motion To Dismiss the Firearm Enhancements*

On December 11, 2020 the People orally moved under section 1385 to dismiss the firearm enhancements alleged in the fourth amended complaint. The trial court, stating it understood the motion was "based solely on District Attorney Gascón's Special Directive," denied the motion. The court stated that "the People may file an amended information omitting the enhancements that are at issue here, and if they do that, we can proceed, but insofar as the motion to dismiss the existing information under . . . section 1385, it is without legal justification." The court said the cases "are clear that the exercise of discretion under [section] 1385 must be based on an individualized consideration of the offense and the offender and not on any antipathy or disagreement with the statutory scheme."

On December 18, 2020 the People filed a written motion under section 1385 to dismiss the firearm enhancements, restating verbatim the arguments recited in Special Directive 20-08.1. In the alternative the People sought leave to file an amended complaint omitting the firearm allegations. At the hearing, the prosecutor did not present any argument in support of the motions, other than parroting the language of Special Directive 20-08.1.

Counsel for Nazir argued the court erred in denying the People's previous motion to dismiss by applying case law that involved a trial court dismissing prior convictions on its own motion, rather than a motion by the People. Counsel for Nazir also argued denying the People's motion would violate Nazir's equal protection rights because Nazir would be subject to greater punishment for the same crimes committed by someone charged (originally) by the new district attorney under Special Directive 20-08. Counsel for Nazir further argued that, because a defendant charged before the change in policy was treated differently from a similarly situated defendant charged after the change, granting the People's motion was in furtherance of justice under section 1385.

The trial court again denied the People's motion to dismiss the firearm allegations. The court stated that, because the "exclusive basis" for the motion was the Special Directive, in order to grant the motion the court "would have to adopt [the district attorney's] rationale," which the court concluded was "not a permissible basis" on which to grant the motion. The court, after considering "the preliminary hearing transcript, information, the probation report," and "the nature of the offense and the background and character of Mr. Nazir," ruled "the motion to dismiss the enhancements is not in the interest of justice."

The court, stating it had "rethought" its position since the December 11, 2020 hearing, also denied the People's motion for leave under section 1009 to file an amended information that omitted the enhancement allegations. The court ruled it was not "proper" for the People to proceed on an amended information that omitted "the very enhancements" that were the subject of

the motion to dismiss under section 1385. The court stated that, if the People were "displeased" with the court's ruling, they could appeal or dismiss the information and refile charges against Nazir that did not include the firearm allegations.

### D. *Nazir Files a Petition for Writ of Mandate or Prohibition*

The People did not appeal, but on March 8, 2021 Nazir filed a petition for writ of mandate or prohibition. Nazir argued the trial court abused its discretion in denying the People's motion to dismiss the firearm enhancements and by denying, after initially indicating it would grant, the People's motion for leave to file an amended information without the firearm enhancements. Nazir also argued the trial court's rulings violated Nazir's equal protection rights. Nazir sought a peremptory writ of mandate directing the trial court to vacate its decision denying the People's motion to dismiss or in the alternative to vacate its order denying the People's motion for leave to amend the information, and to grant Nazir "whatever alternative or further relief as may be appropriate in the interests of justice."

This court denied the petition, and Nazir filed a petition for review in the Supreme Court. The Supreme Court granted the petition for review and transferred the matter to this court with directions to issue an order to show cause why the relief sought in the petition should not be granted. (*Nazir v. Superior Court* (May 26, 2021, S267713).)[3]

---

[3] We summarily denied the petition because we concluded Nazir, who was seeking writ review of the trial court's order

9

# DISCUSSION

Nazir and the People argue the trial court's ruling violates the separation of powers guaranteed under article III, section 3 of the California Constitution by denying the district attorney prosecutorial discretion over charging decisions.[4]  They also argue the court abused its discretion in failing to include Special Directive 20-08 among "the interests of society represented by the People" a court must consider in ruling on a motion to dismiss under section 1385.  (See *People v. Clancey* (2013) 56 Cal.4th 562, 580.)  We need not address whether the trial court's ruling violated article III, section 3 of the California Constitution because we conclude section 1385 does not preclude a trial court from considering a district attorney's policy in ruling on a motion to dismiss a firearm enhancement under section 12022.5 or 12022.53 in furtherance of justice.  (See *Facebook, Inc. v. Superior Court (Hunter)* (2018) 4 Cal.5th 1245, 1275, fn. 31 ["we are guided by the familiar principle that we should address and resolve statutory issues prior to, and if possible, instead of, constitutional questions"]; *In re White* (2019) 34 Cal.App.5th 933, 959 [same]; see also *People v. Williams* (1976) 16 Cal.3d 663, 667 ["we do not reach constitutional questions unless absolutely

---

denying the People's motion (i.e., not his motion), lacked standing.  The Supreme Court apparently thought otherwise.

4    Article III, section 3 of the California Constitution states: "The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

required to do so to dispose of the matter before us"]; *Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1112, fn. 2 ["'it is often deemed prudent to address a statutory or other ground to avoid reaching a constitutional ground'"].)

A.     *Standard of Review*

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373-374; *People v. Flores* (2021) 63 Cal.App.5th 368, 376; *People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)  A trial court may abuse its discretion where "its decision is so irrational or arbitrary that no reasonable person could agree with it," "where the trial court was not 'aware of its discretion'" to dismiss a sentencing allegation under section 1385, or "where the court considered impermissible factors in declining to dismiss."  (*Carmony*, at pp. 377-378; see *People v. Tirado* (2022) 12 Cal.5th 688, 694 (*Tirado*) [a "court acting while unaware of the scope of its discretion is understood to have abused it"]; *People v. Pearson* (2013) 56 Cal.4th 393, 419 [a court abuses its discretion when it misunderstands the scope of that discretion].)

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a [sentencing] allegation without considering the legal principles and policies that should have guided the court's actions."  (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.)  Thus, whether the trial court in this case abused its discretion depends on the scope of that discretion under sections 1385, 12022.5, and 12022.53.  We review this

11

question of statutory interpretation de novo.  (*Tirado, supra,* 12 Cal.5th at p. 694.)

B.    *The Statutory Scheme*

1.    *Section 1385*

Section 1385, subdivision (a), provides that a "judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."  Section 1385 applies to a motion to dismiss "the entire action or, as here, only an enhancement allegation."  (*People v. Bonnetta* (2009) 46 Cal.4th 143, 145-146; see *Tirado, supra,* 12 Cal.5th at p. 696 ["Though section 1385 literally authorizes the dismissal of 'an action,' it has been construed to permit the dismissal of parts of an action [citation], including a weapon or firearm use enhancement."]; *Romero, supra,* 13 Cal.4th at p. 508 ["we have construed section 1385[, subdivision] (a) as permitting a judge to dismiss not only an entire case, but also a part thereof, including the allegation that a defendant has previously been convicted of a felony"]; *People v. Hernandez* (2000) 22 Cal.4th 512, 522 ["'The authority to dismiss the whole includes, of course, the power to dismiss or "strike out" a part.'"]; see also § 1385, subd. (b) [referring to a court's authority to strike or dismiss an enhancement].)

"[S]ections 1385 and 1386, enacted in 1872, codify California's rejection of the English rule of nolle prosequi, under which the prosecutor alone had authority to discontinue a prosecution, in favor of granting sole authority to the courts to

12

dismiss actions in furtherance of justice."[5]  (*People v. Bonnetta, supra*, 46 Cal.4th at pp. 148-149, fn. omitted.)  "Because nolle prosequi is abolished in California, the prosecutor may not unilaterally abandon a prosecution (Pen. Code, § 1386); only the court may dismiss a criminal charge (*id.*, § 1385, subd. (a))."  (*Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1055; see *Romero, supra*, 13 Cal.4th at p. 512 ["when the Legislature does permit a charge to be dismissed the ultimate decision whether to dismiss is a judicial, rather than a prosecutorial or executive, function"].)  Thus, a "'district attorney can only recommend dismissal to the court.  Dismissal is within the latter's exclusive discretion.'"  (*People v. Roman* (2001) 92 Cal.App.4th 141, 145; see *People v. Levins* (1978) 22 Cal.3d 620, 623-624 [section 1385 "does not require that a court dismiss a criminal action upon application of the district attorney; rather, the statutory language clearly indicates the creation of a discretionary power in the court"]; *People v. Ward* (1890) 85 Cal. 585, 590 ["we find no authority for the proposition that 'it is the duty of a justice . . . to enter a dismissal upon the motion of the district attorney'"].)

In general, a court may dismiss an action or sentence enhancement in furtherance of justice in any situation where the Legislature has not clearly evidenced a contrary intent.  (See

---

[5]  Section 1386 provides:  "The entry of a nolle prosequi is abolished, and neither the Attorney General nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in Section 1385."  Nolle prosequi is "Latin for 'not to wish to prosecute.'"  (*Zike v. Advance America, Cash Advance Centers of Missouri, Inc.* (8th Cir. 2011) 646 F.3d 504, 508, fn. 4.)

13

*People v. Fuentes* (2016) 1 Cal.5th 218, 230 ["in light of section 1385's 'prominent and contentious history' [citation], it is critical and even 'demanded,' that the legislative intent to divest a court of its section 1385 discretion be abundantly clear"]; *People v. Clancey*, *supra*, 56 Cal.4th at p. 580 [there is "no statutory or constitutional basis" preventing a court from dismissing a prior conviction under section 1385 in the context of an indicated sentence]; see also *People v. Hatch* (2000) 22 Cal.4th 260, 269 ["Because the trial court's power to dismiss 'in furtherance of justice' is statutory, the Legislature may eliminate it."].) None of the parties cites, nor have we found, any evidence of a clear intent by the Legislature to preclude a court from dismissing a sentence enhancement under section 1385 where a district attorney has legitimate concerns that applying the sentencing scheme in question was not in furtherance of justice, and instead created injustice.

But that does not end the inquiry; a court does not have absolute power to dismiss an action in furtherance of justice. (See *People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*) ["'"The trial court's power to dismiss an action under [section 1385], while broad, is by no means absolute."'"]; see also *Romero*, *supra*, 13 Cal.4th at p. 530; *People v. Orin* (1975) 13 Cal.3d 937, 945; *Wheeler v. Appellate Division of Superior Court* (2021) 72 Cal.App.5th 824, 842.) Although section 1385 does not define "in furtherance of justice," a large body of precedent has created boundaries on the judicial power conferred by the statute. (*Williams*, at p. 159; see *People v. Hatch*, *supra*, 22 Cal.4th at p. 268 ["the concept of 'furtherance of justice' [citation] is amorphous"].) Under section 1385 trial courts must balance "'"the constitutional rights of the defendant, and *the interests of*

*society represented by the People*, in determining whether there should be a dismissal."''"  (*Williams*, at p. 159; see *Hatch*, at p. 268; *Orin*, at p. 945.)

Almost all of that precedent arose in the context of a trial court dismissing an action, charge, or enhancement on its own motion,  followed by an appeal by the People.  (See *Williams*, *supra*, 17 Cal.4th at p. 159 [addressing whether the trial court abused its discretion in dismissing on its own motion one of two prior serious or violent felony convictions under the three strikes law]; *People v. Hatch*, *supra*, 22 Cal.4th at p. 268 [addressing the consequences of a trial court order dismissing on its own motion certain charges for lack of evidence]; *Romero*, *supra*, 13 Cal.4th at p. 530 [addressing whether a trial court may dismiss on its own motion a prior serious or violent felony conviction under the three strikes law in furtherance of justice]; *People v. Orin*, *supra*, 13 Cal.3d at p. 945 [addressing whether the trial court could dismiss on its own motion two of three counts against the defendant].)  In that context, the ""''interests of society represented by the People''"" refers to the "'legitimate interest in "the fair prosecution of crimes properly alleged,"''" and a "''"dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion."''"  (*Romero*, at p. 531, italics omitted; accord, *Williams*, at p. 159; see *Orin*, at pp. 946-947 ["appellate courts have shown considerable opposition to the granting of dismissals under section 1385 in instances where the People are thereby prevented from prosecuting defendants for offenses of which there is probable cause to believe they are guilty as charged"].)  When the trial court, on its own motion or at the request of the defendant, considers whether to dismiss an action under section

1385, the court must keep the "scales of justice . . . in balance" (*People v. Winters* (1959) 171 Cal.App.2d Supp. 876, 887) by not having a case brought by the People "thrown out of court except for a reason which can be said to be that which would motivate a reasonable judge" (*People v. Curtiss* (1970) 4 Cal.App.3d 123, 126; see *People v. Clancey, supra,* 56 Cal.4th at pp. 580-581; *People v. Vasquez* (2021) 72 Cal.App.5th 374, 381).  Thus, for example, a court may not on its own motion dismiss a charge or allegation """"to accommodate judicial convenience or because of court congestion"""" (*Clancey*, at p. 581), "'because a defendant pleads guilty'" (*ibid.*), or based on "bare antipathy to the consequences for any given defendant" (*Williams*, at p. 161; see *Romero*, at p. 531 ["[n]or would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations'"]).

But "the interests of society represented by the People" do not begin or end with the mechanical prosecution of charges properly alleged.  "The public prosecutor "'is the representative not of any ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."'" (*People v. Eubanks* (1996) 14 Cal.4th 580, 589; accord, *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1387.) "'The nature of the impartiality required of the public prosecutor follows from the prosecutor's role as representative of the People as a body, rather than as individuals.  "The prosecutor speaks not solely for the victim, or the police, or those who support them, but

for all the People.  That body of 'The People' includes the defendant and his family and those who care about him.  It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.'"'" (*Dehle*, at p. 1388, quoting Corrigan, *On Prosecutorial Ethics* (1986) 13 Hastings Const.L.Q. 537, 538-539.)  Thus, "the district attorney is expected to exercise his or her discretionary functions in the interests of the People at large . . . ." (*Eubanks*, at p. 589; accord, *People v. Martin* (2018) 26 Cal.App.5th 825, 838; *Dehle*, at p. 1388.)

In conducting a trial the "prosecutor has the responsibility to decide in the public interest whether to seek, oppose, accept, or challenge judicial actions and rulings.  These decisions . . . go beyond safety and redress for an individual victim; they involve 'the complex considerations necessary for the effective and efficient administration of law enforcement.'" (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 452; see *People v. Birks* (1998) 19 Cal.4th 108, 134 [a prosecutor's discretion to choose "the actual charges from among those potentially available arises from '"the complex considerations necessary for the effective and efficient administration of law enforcement"'"]; see also *People v. Dehle*, *supra*, 166 Cal.App.4th at p. 1387 ["[s]ubject to supervision by the Attorney General [citations], . . . the district attorney of each county independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings"].)

For example, after charges have been filed, a prosecutor may seek a dismissal under section 1385 for many reasons, including to effectuate a plea agreement.  (See *People v. Bonnetta*, *supra*, 46 Cal.4th at p. 153, fn. 5; *People v. Orin*, *supra*, 13 Cal.3d

17

at p. 946.)  By definition, plea "bargaining" trades a defendant's maximum exposure for expediency and finality (see *People v. Segura* (2008) 44 Cal.4th 921, 929 [plea agreements benefit the criminal justice system by "promoting speed, economy, and the finality of judgments"]), factors a court may not consider in dismissing a charge under section 1385 on its own motion (see *People v. Clancey*, *supra*, 56 Cal.4th at p. 581; *Romero*, *supra*, 13 Cal.4th at p. 531).  Thus, under section 1385 the "interests of society" promoted by a prosecutor's motion to dismiss under section 1385 are broader than those a court may seek to advance on its own motion.  (See *People v. Superior Court* (1967) 249 Cal.App.2d 714, 718 (*King*) ["Under the adversary nature of our criminal procedure, the prosecuting attorney, as the People's representative, is often in a position to make application for a dismissal 'in furtherance of justice' when the record then before the trial judge would not justify a dismissal by the judge on his own motion." (Italics omitted.)].)[6]

---

[6]     In *People v. Superior Court (Howard)* (1968) 69 Cal.2d 491 the Supreme Court appeared to question whether a trial judge's "discretion to dismiss on his own motion is not as great as his discretion to dismiss on the motion of the prosecutor."  (*Id.* at pp. 503-504, citing *King, supra*, 249 Cal.App.2d at p. 718.)  In *Howard*, however, the Supreme Court considered whether a trial court had discretion under section 1385 to dismiss an action on its own motion after a jury returned a guilty verdict.  In responding to the People's argument that a trial court could only do so with the prosecutor's approval, the Supreme Court made clear that, contrary to the suggestion in *King*, a trial court has discretion to dismiss an action under section 1385 before or during trial, "notwithstanding the fact that there is sufficient evidence of guilt," so long as the court "is convinced that the only

Moreover, in the context of sentencing, the Legislature has stated that the "interests of justice" under section 1385 include ensuring defendants receive proportionate punishment.  (See *People v. Stamps* (2020) 9 Cal.5th 685, 701-702 [citing legislative history stating that ""'punishments that are disproportionate to the offense [do] not serve the interests of justice, public safety, or communities'""]; *People v. Flores*, *supra*, 63 Cal.App.5th at p. 384 [same].)  Because this case involves the denial of a motion to dismiss sentence enhancements, we consider the sentencing scheme in question "to give content to the concept of 'furtherance of justice.'"  (*Williams*, *supra*, 17 Cal.4th at p. 160; see *ibid.* [considering "the 'letter'" and the "'spirit'" of the three strikes law in determining whether a court abused its discretion in dismissing on its own motion a prior serious or violent felony conviction]; *Wheeler v. Appellate Division of Superior Court*, *supra*, 72 Cal.App.5th at p. 843 [identifying "the 'interests of society' as expressed in the ordinances at issue" in the case]; *People v. Orabuena* (2004) 116 Cal.App.4th 84, 96 [considering "the goals of Proposition 36," the Substance Abuse and Crime Prevention Act of 2000, in concluding the trial court had discretion under section 1385 to dismiss a defendant's conviction for a non-drug crime so that the defendant, who was otherwise disqualified from Proposition 36 treatment, would be eligible for the program]; *People v. Jordan* (1978) 86 Cal.App.3d 529, 537

---

purpose to be served by a trial or a retrial is harassment of the defendant."  (*Howard*, at p. 504.)  The Supreme Court did not address whether there were other circumstances in which a prosecutor's legitimate motives for seeking a dismissal under section 1385 were broader than a court's motives.

["dismissal for the purpose of effectuating the legislative design may properly be designated in 'furtherance of justice'"].)

## 2. *Sections 12022.5 and 12022.53*

As discussed, the People alleged sentence enhancements against Nazir under sections 12022.5, subdivisions (a) and (d), and 12022.53, subdivision (b). Section 12022.5, subdivision (a), imposes an additional prison term of three, four, or 10 years for any person who personally uses a firearm in the commission of a felony or attempted felony. (See *People v. Le* (2015) 61 Cal.4th 416, 420.) Section 12022.5, subdivision (d), imposes the term proscribed under section 12022.5, subdivision (a) (i.e., three, four, or 10 years), for any violation of section 245 (assault with a deadly weapon or by means of force likely to produce great bodily injury) "if a firearm is used." "The intent of [section 12022.5] is to "'deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of a crime'" [citation], and to "'deter the use of firearms in the commission of violent crimes by prescribing additional punishment for each use."'"" (*In re Tameka C.* (2000) 22 Cal.4th 190, 196; see *People v. Ahmed* (2011) 53 Cal.4th 156, 161-162.)

"Section 12022.53 was first enacted in 1997 as part of the state's 'Use a Gun and You're Done' law. [Citation.] The statute sets out 'sentence enhancements for personal use or discharge of a firearm in the commission' of specified felonies." (*Tirado, supra,* 12 Cal.5th at pp. 694-695, fn. omitted; see *People v. Anderson* (2020) 9 Cal.5th 946, 950-951.) Under section 12022.53, subdivision (b), a person who "personally uses a firearm" in the commission of one of the enumerated felonies

20

"shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years."

Before 2018, sections 12022.5 and 12022.53 prohibited a trial court from striking a firearm enhancement in the interest of justice under section 1385.  (See *Tirado*, *supra*, 12 Cal.5th at p. 695; *People v. Humphrey* (2020) 44 Cal.App.5th 371, 377.) "[T]he Legislature's goal" was "to protect Californians and deter violent crime by imposing . . . the harshest applicable punishment" in each case.  (*Tirado*, at p. 701.)  But eventually "the enhancement scheme 'caus[ed] several problems,'" including a significant increase in the prison population and its corresponding impact on the state's budget.  (*Ibid.*)  The Legislature enacted Senate Bill No. 620 (2017-2018 Reg. Sess.) to amend sections 12022.5 and 12022.53, effective January 2018, to give a trial court discretion to dismiss a firearm enhancement in the interest of justice under section 1385.  (Stats. 2017, ch. 682, § 1; see *Tirado*, at pp. 695-696; *Humphrey*, at p. 377.)  Sections 12022.5, subdivision (c), and 12022.53, subdivision (h), now provide that a "court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."[7]

---

[7]    None of the parties, nor any of the amicus curiae, argues section 12022.5, subdivision (c), or section 12022.53, subdivision (h), precludes a trial court from dismissing a firearm enhancement at a time other than "at the time of sentencing." Although we do not reach this issue, we observe that the statutory language does not bar a trial court from dismissing a firearm enhancement before or during trial.  (See *Romero*, *supra*, 13 Cal.4th at p. 518 ["we will not interpret a statute as

The legislative history of Senate Bill No. 620 indicates the Legislature was also motivated to amend sections 12022.5 and 12022.53 by research showing that mandatory sentence enhancements "[d]isproportionately increase[d] racial disparities in imprisonments," had "no material deterrent effect," and "[g]reatly increase[d] the population of incarcerated persons." (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) Apr. 25, 2017, p. 3.)  Thus, the Legislature authorized a trial court to dismiss a sentencing allegation or an enhancement under section 1385 for a "deserving defendant," but allowed a trial court to impose the enhancement on "a defendant who merited additional punishment for the use of a firearm in the commission of a felony . . . ."  (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) Apr. 25, 2017 at p. 7.)  The Supreme Court recently said of Senate Bill No. 620: "This history reflects a legislative intent to retain the core characteristics of the sentencing scheme.  More severe terms of imprisonment with the harshest applicable sentence remained the default punishment.  However, courts were granted the flexibility to impose lighter sentences in appropriate circumstances."  (*Tirado*, *supra*, 12 Cal.5th at pp. 701-702.)

In determining whether to dismiss a firearm enhancement under section 12022.5 or 12022.53, a court considers the same factors considered "'when handing down a sentence in the first instance.'" (*People v. Flores*, *supra*, 63 Cal.App.5th at p. 377; see *People v. Yanaga* (2020) 58 Cal.App.5th 619, 626-627; *People v. Pearson*, *supra*, 38 Cal.App.5th at p. 117.)  These factors include

eliminating courts' power under section 1385 'absent a clear legislative direction to the contrary'"].)

22

those listed in California Rules of Court, rule 4.410 (general objectives in sentencing), rules 4.421 and 4.423 (circumstances in aggravation and mitigation), and rule 4.428(b) (discretion in striking an enhancement and punishment for an enhancement under section 1385).  These rules refer to circumstances specific to the crime and the defendant's criminal history, as well as to broader societal objectives, such as "[d]eterring others from criminal conduct by demonstrating its consequences" and "[i]ncreasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices." (Cal. Rules of Court, rule 4.410(a)(4) & (8).)  The rules state the trial court "should be guided by statutory statements of policy, the criteria in [the Rules of Court], and any other facts and circumstances relevant to the case." (*Id.*, rule 4.410(b).)

C.      *The Trial Court Erred in Refusing To Consider the District Attorney's Special Directive in Denying the People's Motion To Dismiss Under Section 1385*

The trial court misunderstood the scope of its discretion when it refused to consider Special Directive 20-08 in determining whether to grant the motion to dismiss the firearm enhancements alleged against Nazir.  Special Directive 20-08 states that the district attorney's new policy was based on research showing that existing sentence enhancements do not deter crime or reduce recidivism, which are objectives of the criminal justice system a court may consider in determining whether to impose a firearm enhancement under section 12022.5 or 12022.53, and thus are relevant to determining whether to dismiss an enhancement.  (See *People v. Pearson, supra,* 38 Cal.App.5th at p. 117; Cal. Rules of Court, rule 4.410(a)(4)

23

& (8).)  The court's statement on December 11, 2020 that it could not base a ruling under section 1385 on "any antipathy or disagreement with the statutory scheme," and the court's statement a week later that to grant the motion it "would have to adopt [the district attorney's] rationale," misapplied the Supreme Court's guidance in *Williams*.

In *Williams* the trial court, on its own motion, dismissed one of two 13-year-old prior convictions for serious or violent felonies, observing that, although the defendant had "'run afoul [of] the law many times,'" he had not in the interim committed "'crimes involving actual violence.'" (*Williams*, *supra*, 17 Cal.4th at pp. 156-157.)  In considering whether the trial court abused its discretion, the Supreme Court stated trial courts must "look for 'justice' in the [sentencing] scheme's interstices, informed by generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects," and the Court cited the California Rules of Court as the source of such "sentencing principles." (*Id*. at p. 160 & fn. 5.)  The Supreme Court held the three strikes law, which was the sentencing scheme at issue, precluded a trial court from giving weight to "factors extrinsic to the scheme" when balancing a defendant's constitutional rights against "society's legitimate interests" in "the fair prosecution of properly charged crimes." (*Id*. at pp. 160-161.)  Thus, as discussed, a trial court may not consider antipathy toward the law or its consequences in a particular case; instead, in determining whether dismissing a prior serious or violent felony under the three strikes law would be in furtherance of justice, a court must consider only whether a defendant falls "outside the scheme's spirit" by reference to "factors intrinsic to the scheme, such as the nature and

24

circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Ibid.*)

The Supreme Court's decision in *Williams* did not constrain the trial court in this case for two reasons. First, as stated, the "interests of society represented by the People" are broader than fairly prosecuting properly charged crimes. (See *Williams*, *supra*, 17 Cal.4th at p. 161.) But when a court considers on its own motion whether to dismiss a charge or an enhancement, the scope of those interests narrow to reflect the separation of powers between the prosecution, which has sole discretion to "'determine whom to charge, what charges to file and pursue, and what punishment to seek'" from among those potentially available (*Steen v. Appellate Division of Superior Court*, *supra*, 59 Cal.4th at pp. 1053-1054; see *People v. Birks*, *supra*, 19 Cal.4th at p. 134), and the court, which has sole discretion to "dismiss a criminal charge" (*id.* at p. 1055). A court may not "frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature," or "preclude the prosecution" of offenses for which there is probable cause, by dismissing an action, offense, or enhancement under section 1385 "without proper and adequate reason." (*People v. Orin*, *supra*, 13 Cal.3d at pp. 947-948.) Those reasons cannot include the court's "'"personal antipathy"'" (*Williams*, at p. 159) for the effect of the sentencing scheme without materially impairing the inherent functions of the prosecutor. (See *Steen*, at p. 1053 [separation of powers doctrine "does not prohibit one branch from taking action that might affect another," but "the doctrine is violated when the actions of one branch defeat or materially impair the inherent functions of another"]; *Department of Fair Employment & Housing v.*

*Superior Court* (2020) 54 Cal.App.5th 356, 400 [same].) In contrast, where a prosecutor, in his or her discretion, asks the court to dismiss an enhancement because the prosecutor, as a representative of the People, legitimately questions the deterrent effect or value to public safety of imposing a sentence enhancement, a court may consider that position in determining whether granting the motion furthers justice. Such consideration does not "frustrate the legitimate prosecution of a defendant" or ""arbitrarily cut[ ]"" the rights of the People to prosecute properly alleged crimes because it is the People, rather than the court, requesting dismissal. (*Orin*, at p. 947; see *Romero, supra,* 13 Cal.4th at p. 531.)

Second, the Legislature amended sections 12022.5 and 12022.53 to give courts the ability to dismiss an enhancement in the interest of justice precisely because a growing body of research (that did not exist in 1998 when the Supreme Court decided *Williams*) indicated firearm enhancements had "no material deterrent effect." (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 620, *supra*, at p. 3.) The district attorney cited some of that research in the appendix to Special Directive 20-08. The district attorney's concerns the firearm enhancements alleged against Nazir would not produce their desired deterrent effect falls within the "spirit" of sections 12022.5 and 12022.53. (See *Williams*, *supra*, 17 Cal.4th at p. 160.)[8]

---

[8] The respondent superior court and amici curiae in support of the court argue that the party seeking a dismissal has the burden of offering evidence in support of a motion under section 1385 and that neither the People nor Nazir offered any evidence concerning Nazir's background, character, prospects, or other circumstances relevant to the individualized analysis required by

Contrary to the position of the district attorney, however, a prosecutor's motion to dismiss an enhancement under section 1385 is not "a constitutionally protected exercise of prosecutorial discretion," and the trial court may deny such a motion. As discussed, once a district attorney files charges and invokes the court's jurisdiction, only the court, not the district attorney, can dismiss an action or enhancement under section 1385. (*People v. Bonnetta, supra*, 46 Cal.4th at pp. 148-149; see *Romero, supra*, 13 Cal.4th at pp. 515-516 ["the prosecutor may ask the court to dismiss pursuant to section 1385, but 'neither the Attorney General nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in Section 1385'"]; *People v. Tenorio* (1970) 3 Cal.3d 89, 94 [the "prosecutor has never been able to 'exercise' the power to dismiss a charged prior—he has only been able to invite the judicial exercise of that power"].) The district attorney's argument the trial court "lack[s] the power to deny" a prosecutor's motion under section 1385 is contrary to the Legislature's decision in 1872 to abolish nolle prosequi.

---

*Williams*. They argue the People instead relied solely on the Special Directive, which without more is not a sufficient basis to show that dismissing the enhancements was in furtherance of justice. The trial court, however, made clear it would not consider the Special Directive at all, whether in conjunction with the *Williams* factors or otherwise. Thus, the court misunderstood the scope of its discretion by failing to apply the factors relevant to considering whether to dismiss a sentence enhancement (see Cal. Rules of Court, rule 4.428(b)) and by refusing to consider the Special Directive.

27

The district attorney also argues that he has the prerogative to determine "'whether to continue a prosecution'" (*People ex rel. Kottmeier v. Municipal Court* (1990) 220 Cal.App.3d 602, 609) and that, "[a]s a practical matter, it would be impossible for the court to compel a district attorney to proceed with a prosecution that a district attorney no longer wished to pursue." The district attorney points to the plea bargaining process and cites the Supreme Court's statement in *People v. Orin, supra*, 13 Cal.3d 937 that a prosecutor may secure a plea agreement through the "dismissal of one or more counts of a multi-count indictment or information." (*Id.* at p. 942.) But the Supreme Court's statements in *Orin* did not mean a prosecutor can on his or her own authority dismiss a count. The Supreme Court merely identified dismissal of one or more counts as one of several possible consequences of a plea agreement, with "the People's acceptance of a plea to a lesser offense than that charged" as another possibility. (*Ibid.*) Moreover, in the very next sentence of its opinion in *Orin* the Supreme Court made clear that "[j]udicial approval is an essential condition precedent" to any plea agreement. (*Id.* at pp. 942-943; see §§ 1192.1, 1192.3, 1192.4, 1192.5.) While the prosecutor has sole authority to negotiate on behalf of the People, a plea agreement is not self-executing; the court must approve it. (*People v. Clancey, supra*, 56 Cal.4th at p. 570; *Orin*, at p. 943). Thus, if a court rejects a plea agreement, the prosecutor must continue to prosecute the case or request dismissal for another reason. (See, e.g., *People v. Stringham* (1988) 206 Cal.App.3d 184, 190-191 [trial court rejected a plea agreement after the victim's family opposed it, and the case proceeded to trial]; *People v. Cobb* (1983) 139 Cal.App.3d 578, 581 [trial court refused to consider a plea

28

agreement proposed after the deadline established by local rules].)  Similarly, if the court denies a prosecutor's request for dismissal under section 1385, the prosecutor must continue the prosecution, appeal the ruling, or seek dismissal on another ground, for example, by announcing the prosecution is unable to proceed.  (See *People v. Chacon* (2007) 40 Cal.4th 558, 561 [after the trial court ruled for the defendant on a motion in limine, the People announced they were unable to proceed, and the trial court dismissed the action under section 1385]; *People v. Nguyen* (2017) 12 Cal.App.5th 574, 581 [same].)  Section 1387 "generally permits the prosecution to refile felony charges following dismissal" at least once.  (*Jackson v. Superior Court* (2017) 4 Cal.5th 96, 103.)

Nor is there merit to the district attorney's argument there is "no need for the [trial] court to consider whether, on the facts of a particular case, dismissal furthers the interests of justice" because, "as the People's representative," the prosecutor "has already determined that it is not within the People's interest to prosecute the defendant for a violation of [the applicable] legislative scheme."  As discussed, if a prosecutor moves to dismiss an enhancement before proving it, the abolition of nolle prosequi requires the court to exercise its discretion in determining whether dismissal furthers the interests of justice.  If a prosecutor moves to dismiss an enhancement that has been proven, the court must exercise its sentencing discretion in determining whether to grant the motion.  (See *People v. Clancey, supra*, 56 Cal.4th at p. 580 ["'The imposition of sentence and the exercise of sentencing discretion are fundamentally and inherently judicial functions.'"]; *People v. Sandoval* (2007) 41 Cal.4th 825, 847 ["The trial court's sentencing discretion must

29

be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'"].)  In the context of sections 12022.5 and 12022.53, the Supreme Court in *Tirado, supra*, 12 Cal.5th 688 stated the Legislature intended for judges "'to impose sentences that fit the severity of the offense'" by giving judges "the flexibility to impose lighter sentences in appropriate circumstances."  (*Id.* at pp. 701-702.)  A judge cannot exercise that flexibility without making case-by-case assessments whether dismissal of a firearm enhancement is in furtherance of justice under section 1385.  Case-by-case assessments also conform with California Rules of Court, rules 4.410, 4.421, and 4.423, which list individualized factors a court may consider in determining whether to dismiss a firearm enhancement under section 1385. (See *People v. Flores*, *supra*, 63 Cal.App.5th at p. 377; *People v. Yanaga*, *supra*, 58 Cal.App.5th at pp. 626-627; *People v. Pearson*, *supra*, 38 Cal.App.5th at p. 117; Cal. Rules of Court, rule 4.428(b).)

On remand the trial court must consider Special Directive 20-08 in determining whether to dismiss the firearm allegations against Nazir.  Pursuant to the amendments to section 1385 that went into effect on January 1, 2022, the court must also "consider and afford great weight to evidence offered by the defendant" to prove that any of the enumerated mitigating circumstances apply.  (§ 1385, subd. (c)(2).)  Those circumstances include whether multiple enhancements are alleged in a single case, in which case "all enhancements beyond a single enhancement shall be dismissed," and whether the application of an enhancement

30

could result in a sentence of over 20 years, in which case the enhancement "shall be dismissed." (*Id.*, subd. (c)(3)(B) & (C).)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its December 18, 2020 order denying the People's motion to dismiss the sentence enhancements alleged against Nazir and to enter a new order scheduling a hearing to determine whether this is an appropriate case in which to dismiss the sentence enhancements under sections 1385, as amended, 12022.5, subdivision (c), and 12022.53, subdivision (h). In so doing, the court must consider Special Directive 20-08, among other factors, in determining whether dismissing the firearm enhancements is in furtherance of justice.

SEGAL, J.

We concur:

PERLUSS, P. J.          WISE, J. *

---

\*     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31